*In re* FRANK M. STEFANINI, a Minor.—(THE PEOPLE OF THE STATE OF ILLINOIS, Petitioner-Appellee, *v.* FRANK M. STEFANINI, Respondent-Appellant.)

First District (1st Division)    No. 77-547

Opinion filed February 21, 1978.

James J. Doherty, Public Defender, of Chicago (Frances Sowa, Assistant Public Defender, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger and Mary Ellen Dienes, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE GOLDBERG delivered the opinion of the court:

Frank M. Stefanini, a minor (respondent), has appealed from an order committing him to the Department of Corrections (D.O.C.). Respondent made an admission to charges of criminal damage to property and burglary. Respondent contends he was denied effective assistance of counsel because of commitments by his attorney to respondent's parents and the court erred in committing him to D.O.C.

On April 13, 1976, a petition for adjudication of wardship was filed. Respondent was charged with criminal damage to property in the home of his parents. On that day respondent appeared in open court accompanied by his parents. The father responded affirmatively when asked by the court if he planned "to get a private attorney" for respondent. The father then advised the court that the respondent was not attending school, had run away several times and the parents were "trying to place him in Arden Shores school."

On May 20, 1976, a probation officer told the court that respondent had made threats against his parents and that respondent "reacts very emotionally to situations." A public defender told the court that respondent was present with his parents and that the public defender would not accept an appointment as counsel "on these petitions." The court mentioned the pendency of two additional petitions against the respondent.

On June 3, 1976, attorney Themis Karnezis advised the court he had filed his appearance for respondent. The court mentioned that four petitions had been filed concerning respondent. The record shows a colloquy between the court and respondent, aged 14 years. After an explanation by the court, respondent stated that he had kicked two holes in a wall and had thrown a "trophy" through the wall at his parents' home. Respondent also described how he and a friend had burglarized a home by breaking the back door window and had stolen "a silverware set and some old coins." The court entered a finding of delinquency and an adjudication of wardship.

At this point a probation officer gave the court additional information concerning the respondent and the problems encountered by the parents. The officer suggested to the court that he planned to refer the matter to the Unified Delinquency Intervention Service (U.D.I.S.). He told the court that Arden Shores had been contacted but "it could take as much as a couple of weeks" before they could accept respondent.

On June 17, 1976, the court was informed that the U.D.I.S. was

"completing an assessment." At the request of his attorney, the minor was released to the custody of his parents.

On July 15, 1976, the probation officer advised the court that U.D.I.S. would assist the State Department of Children and Family Services (D.C.F.S.) but "would not officially accept" the case. The probation officer also reported to the court that two days after his release the respondent left the home of his parents without permission. He returned after four days. The attorney told the court that the parents had four other children and could not cope with respondent. The court then announced its intention to commit the respondent to the Illinois Department of Corrections. The U.D.I.S. supervisor explained that Arden Shores did not have space for respondent. Respondent's father expressed regret concerning this and said, "I thought that he was going to Arden Shores." The order of commitment was entered July 15, 1976.

■■ In our opinion, a simple reading of this record refutes completely the contention of appellate counsel that "respondent was denied effective assistance of counsel." The trial court performed his duty in an admirable manner and gave respondent a clear explanation of the procedure and its alternatives. The respondent's admission was coherent and complete. It is difficult to comprehend how one, or more, attorneys of the highest skill or the widest experience could have achieved a different result. In our opinion, this record does not reflect any actual conflict of interest between the respondent, the parents and the attorney. So far as this record shows, the attorney had no past contact of any kind with the parents.

Appellate counsel contends that the conflict is "manifest." First they urge that the attorney was "retained" by the parents. The record shows that on April 13, 1976, respondent's father advised the court that he "planned to get a private attorney" for respondent. On June 3, 1976, attorney Themis Karnezis filed his appearance as attorney for respondent. There is no other showing in the record that Mr. Karnezis was "retained" or even selected by the parents.

Counsel next urges that "the parents were the complainants on one of the petitions before the court." There are two petitions for adjudication of wardship in the record and supplemental record before us. In circuit court No. 76 J. 4607 the petitioner is Peter J. Fee. In No. 76 J. 6362 the petitioner is a youth officer, Jerald C. Brandt. We find no actual existing conflict of interest in the case before us. See *People v. Newberry* (1973), 55 Ill. 2d 74, 302 N.E.2d 34.

Counsel for respondent here relies upon *People v. Stoval* (1968), 40 Ill. 2d 109, 239 N.E.2d 441, and *People v. Coslet* (1977), 67 Ill. 2d 127, 364 N.E.2d 67. In both of these cases the facts showed a relationship which *per se* gave rise to a possible conflict of interest and thus abridged the right to effective assistance of counsel. In *Stoval*, defendant was charged with burglary and theft from a jewelry store. His attorney and the

attorney's law firm had been and were attorneys for this store and its owner. (*Stoval*, 40 Ill. 2d 109, 112.) We find *Stoval* cited in *People v. Kester* (1977), 66 Ill. 2d 162, 166-68, 361 N.E.2d 569, which is another example of a *per se* conflict of interest. There, defendant's attorney had previously appeared as an assistant State's Attorney in the same proceedings.

In *Coslet*, defendant was tried for murder of her husband. Her attorney was also legal counsel for the administrator of the estate of the deceased. Defendant was convicted of voluntary manslaughter. The administrator sought to bar her from participation in the estate. *Coslet*, 67 Ill. 2d 127, 132.

In each of these cases the attorney was placed in a *per se* conflict of interest quandary. No such situation is reflected by the record before us. In our opinion, the theory that parents of a minor charged in a delinquency petition may not select or retain an attorney to assist their child is contrary to the natural relationship between parent and child. In short, we find neither a *per se* nor an actual conflict of interest in the record before us.

■■ Counsel for respondent next urges that the trial court erred in committing the respondent to the D.O.C. The attorneys urged that the best interest of respondent would be served by placement in Arden Shores. The record here shows that the Arden Shores facility was unavailable to respondent because of a crowded condition. Respondent's father advised the court on April 13, 1976, of efforts by the parents to place respondent in Arden Shores. Three months later, when the order of commitment was entered, the Arden Shores facility was still not available to the respondent. In addition, the court was advised that the U.D.I.S. would not officially accept the case. The record shows that release of respondent to his parents was totally unfeasible because respondent had repeatedly run away. It appears that the trial court chose the wisest course of action then available by entering the commitment order.

In *In re Wilson* (1976), 40 Ill. App. 3d 619, 622, 352 N.E.2d 251, this court pointed out that section 5—2 of the Juvenile Court Act (Ill. Rev. Stat. 1973, ch. 37, par. 705—2): "* * * provides the types of dispositional orders that may be entered, and it does not defer one to another. Furthermore, the Act gives the court a great deal of discretion regarding the conduct of a dispositional hearing."

In our opinion, the trial court in the case before us made every possible effort to make the best of an unfortunately bad situation. The judgment is affirmed.

Judgment affirmed.

McGLOON and O'CONNOR, JJ., concur.